Judge Buckner
delivered the opinion of the Court.
ltf March, 1827, John Withers made his last will and testament, which was admitted to record, in the county court of Lincoln, in October of that year, by which he appointed his wife, Susannah, executrix, his son James, and Hugh Logan, the plaintiff in error, who had intermarried with his daughter Kitty, executors thereof. Logan only, took upon himself the burthen of the executorship.
By the second clause of the will, he devised to his wife, for life, four slaves, Bob, Winney, Violet and Harriet, and'after her death, to be equally divided among his children, James Withers, Cinthia Duncan, John Withers, Lide O’Bannon, Kitty B. Logan and Laban Withers.
The third and fourth clauses relate to personal Eroperty only. By the fifth he devised to his son aban, two slaves, Edmund and Louisa.
*385 The 6th, 7th, 8th and 9th -clauses are iu the following words:
“6th. “It is my will and desire, that my daughter, Kitty Logan, have my four negroes, namely, Eliza, ■Peter, Mary and Jane, that she now has in possession, and every other property she has, in any wise belonging to me.”
“7th. It is my will and desire that Braddock Withers, a boy that I raised, have my negro boy Jacob, that he has now in his possession, and every other property, that I have heretofore gave him; also, to have one hundred dollars out of the part of my property that may fall to my son, John Withers.”
“3th. It is my will and desire, that all my just debts he paid out and from that part of my property, that may fall to my four children, namely, James Withers, John Withers, Cinthe Duncan, Lide O’Bannon.”
“9th. It is my will and desire, that all the balance of my negroes, not here specially. devised, and all .other property net specially devised, shall-be, after my death, the property of my four children, James Withers, John Withers, Cinthe Du mean and Liddy O’Bannon, except the one hundred dollars out of my son John Withers’s part, that I have before willed to Braddock Withers.”
John Withers, James Withers, Moses Duncan and ■George O’Bannon, the residuary legatees, under the 9th clause of the will, instituted their action of de-tinue, to recover from Hugh Logan two slaves, to-wit: Solomon and Charlotte, whose names are not mentioned in the will, but which were claimed by them as a part of the property devised to them in said clause, and of which Logan had obtained the possession.
The trial was had on the general issue, and a verdict having been obtained in favor of said legatees, the defendant, Logan, moved the circuit court for a new trial, on the ground that it was against the law and evidence of the case, which was overruled and judgment entered against him, to reverse which, he prosecutes this writ of error.
*386 By proof introduced, it appeared that about the ^rsf danuary, 1827, the testator haring been displeased with the slave Solomon, whom he had owned for a considerable -time previously, determined that ■he should be hired, and should not again return to his plantation. -He requested a friend to take him off for that purpose, and solicited the aid of his son* -in-law, Logan, in effecting the object.
They' accordingly endeavored to do so, but not. being able to succeed in hiring him, at the price which the testatorhad directed them to demand, Logan said he would keep him and pay whatever his labor should •be worth, and in that wav obiainod the possession of him, which he still held, and had paid tax for him. The testator, in the mean time, bad not claimed (ho slave, or attempted to control him-, but on one occasion told Logan, that he could'hire the fellow to one Taylor.
The other slave sued for, (Charlotte) had been sent by the testator, about three years previous to his death, to Logan’s, as a nurse, during which time he bad not taken her back, and had not been heard to set up any claim to her, but frequently, when she was sent to his house on errands, had directed her to hasten back to Logan’s. When the children of the testator had left him, he had given to each of them, a slave, and each had, at different times, received from him other small gifts arid favors, the amount or value of which was not ascertained. The share, however, •of Logan’s wife, would not be greater, even if she retained the two slaves sued for, than that of either of the others, except a daughter then deceased, who had married aman by the name of Elgin. The only-property which.he had given to Logan’s wife, upon her marriage, which had taken place about six years before the trial, except the three shires first named in the sixth clause of the will, the fourth having been born since, was a mare of little value, which Logan had sold shortly after he got her; a cow, which had died betore the making of the will; and a bed, which she claimed as the proceeds of her own labor, before lier marriage. The two slaves, Solomon and Char» lotte, were the only property belonging to the testator, *387 at the time of making the will, which was in Logan’s possession, unless the bed- be so considered. The testator and Logan lived about two miles distant each other.
The plaintiffs had received, since testator’s death, twelve slaves, under the residuary devise to them, which had been valued at $¡2,400.
Some debts, then in litigation and disputed, were claimed by different persons, against the estate of the testator, but not, as it; was. believed, to a greater amount than the personal property would be sufficient to pay.
It cannot be denied,-that-under the. 9th clause of the will, the plaintiffs, John and James Withers, Moses Duncan the husband of Cinthe, and George O’Bannon the husband of Lide, bad-a right to the slaves, Solomon and Charlotte, unless they passed to Mrs. Logan, under the words “and every other properly she has, in any wise, bclonging-to me,”'in the sixth clause.
This', like every other matter off-controversy growing out of a latent ambiguity in a last will and testament, must be decided by considering, not only every part of the instrument, which can afford any light in endeavoring to ascertain the true intent of the testator, but the testimony introduced also* At what time Mrs. Logan became possessed of the three slaves first;. named in that clause, the proof, .as set forth in the record, does not satisfactorily show, for it was proved, by the witness for plaintiffs in the circuit court,-that ', the testator gave to- each child, upon leaving him, one • slave. ' By a witness on the part of Logan-* it was ■ proved that the only property given to his wife, on her marriage, except the three/slaves first-named iñ the sixth clause, was a mare, &e. There can be no. doubt, however, that she had received them long before the date of the will. The fourth had never belonged to the testator, and Logan’s title to the four, as a gift to his wife, would, no doubt, have been valid, independent of the bequest. But the testator, either from an erroneous impression of the law, as to what it required, to render valid a gift of slaves, by a parent ¡o a child,, or from prudentiaLconsiderations, and. to prevent all dispute as-to the various gifts *388 which* from, tibie to time, he had made to iiis children* of portions of his property, seemed to have considered it as advisable to confirm them by his will. Hence he devises to Braddock Withers, Jacob, whom the devisee then had in his possession, and every property which he had theretofore given to him.
To his son Garland Withers, he devised all the property which, in the clause containing the bequest, he declares he had before that time given to him. Other clauses exhibit similar examples. It is, therefore, very improbable that whilst observing such great and perhaps unnecessary caution, in devising to Mrs. Logan the slaves Eliza, Peter, Mary and Jane, by-name, of which she, or rather her husband, was then the owner, he would have omitted to name Solomon, and Charlotte also, had he intended that they should be included. If it be conceded that the words, “and every other property she has, in any wise belonging to me,” would be sufficient to embrace Charlotte, yet they could not be made to apply to Solomon, for she never had him in possession, He had- been hired by-Logan. See case of Breckenridge and wife against Duncan and others, II. Marshall, 50.
But there was other property which had been given by the testator to Mrs. Logan, to which they were, probably, intended to apply. It cannot reasonably be supposed that when making his will, he would have recollected every thing, which, in the course of four or five years, he had given to her. lie might have, been ignorant of the disposition, which Logan had made of the mare, or not have recollected that he. had sold her. Had he known that Logan had no property in his possession, which he had given to his daughter, except the negroes natped in the 6th clause and the bed, and had intended to have devised to her, Solomon and Charlotte, it would have been less trouble to have inserted their names, than to have added the words under which the defendant in the circuit court claimed them.
But whateverdoubtmight .be entertained as to the proper construction,of this clau.se, separately taken, when viewed in connection with the 9th clause, it -vanishes. He therein devises to his sons John and *389 James and bis daughters Cintbe and Liddy, all the balance of bis negroes, not specially devised to others. It could not have been said, with propriety, Solomon had ever been in the possession of Mrs. Logan. Her husband had hired him. A jury might perhaps, have been justified, under the proof, as to the, manner in which Logan had obtained and held possession of Charlotte, to have found for him as to her, independent of the will. But they determined otherwise; and we do not consider it our duty to say, that the verdict was unwarranted, by the testimony. It 1ms been insisted in argument, that as Logan was the only qualified executor of the will, and as by the 8th clause of it, the residuary devise to the plaintiffs, was encumbered with the payment of debts, the slaves, if they did not pass under the sixth. clause, were assets in his hands, for the payment of debts, and that he could not be deprived of them, without his consent, unless upon the execution of a refunding bond.
inhands of executor, but i^mediatelv transferred to devisee, and them without assent of executor, recover them by suit, without givingrofund-ing bond.
Kincaid and Anderson, for plaintiff; Denny, for •defendants.
The act of 1800, declares, “that as respects last wills and testaments, slaves shall hereafter be held and deemed real estate, and shall pass thereby, in the same manner, and under the same regulations as land.ed property.” Since the passage of that act, slaves devised are not assets in the hands of the executor, The legal title to them is immediately transferred to the devisee, and he may lawfully take possession of them without the assent of the executor. See the case of Irons vs. Luckey, I. Marshall, 74.
We are, therefore, of opinion, that the motion for a new trial was properly overruled. r r J
The judgment of the circuit court .must be affirmed •with costs.
&hte, .Chief J ustioe Robertson did not sit in this case.